UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

<u>Paul Jenner, et al.</u>

     v.                                      Civil No. 10-cv-497-JL
                                               Opinion No. 2011 DNH 043
<u>CVS Pharmacy, Inc., et al.</u>

### <u>MEMORANDUM ORDER</u>

This products liability case, transferred here from the District of Rhode Island, arises from injuries allegedly sustained by plaintiff Paul Jenner after ingesting the prescription drug metoclopramide.  Jenner and his wife, both Massachusetts citizens, brought suit in Rhode Island Superior Court against various manufacturers of the drug, as well as two pharmacies that allegedly dispensed it to him, seeking to hold them liable under state tort law for failing to warn of the drug's side effects.  Some of the manufacturers removed the case to federal court, <u>see</u> 28 U.S.C. § 1441, arguing that the plaintiffs fraudulently joined the pharmacies as defendants for the purpose of destroying federal diversity jurisdiction, <u>see</u> <u>id.</u> § 1332(a), and preventing removal.  One of the pharmacies, Stop & Shop Supermarket, is allegedly a citizen of the plaintiffs' home state, Massachusetts.  The other pharmacy, CVS, is a citizen of Rhode Island, which would have prevented removal from that

state's courts even if the parties were completely diverse.  See
id. § 1441(b).

Plaintiffs have now moved to remand the case to Rhode Island
Superior Court, see id. § 1447(c), arguing that the pharmacies
were properly joined as defendants and that this court therefore
lacks diversity jurisdiction.  For the reasons explained below,
the motion is granted (except as to the plaintiffs' request for
attorneys' fees).  While it is difficult to hold a pharmacy
liable for failing to warn of a drug's side effects, the removing
defendants have not met their "heavy burden" of showing that
"there is no possibility that the plaintiff[s] would be able to
establish" their claims against the pharmacies, as would be
required for this court to deem their joinder fraudulent.  16
James Wm. Moore, Moore's Federal Practice § 107.14[2][c][iv][B],
at 107-63 to 107-67 (3d ed. 2010) (citing cases).  Nor have the
defendants--who, as the parties invoking this court's
jurisdiction, bear the burden of establishing it--persuaded this
court of their alternative argument that Stop & Shop is not
actually a Massachusetts citizen.  Because the plaintiffs
properly joined an allegedly non-diverse defendant and assert
only state-law claims, this court lacks subject-matter
jurisdiction, and the case must be remanded.

## I.   **Applicable legal standard**

Where, as here, plaintiffs move to remand a case that has been removed to federal court on a theory of fraudulent joinder of non-diverse defendants, the case must be remanded unless the removing defendants meet their "heavy burden" to "show either that (1) there is no possibility that the plaintiff would be able to establish a cause of action against the [non-diverse] defendant in state court" or "(2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Id. (citing cases).[1]  In determining whether that showing has been made, courts generally look to the complaint and removal notice, along with any supporting materials submitted by the parties. Id. at 107-67.  As with a motion to dismiss, the "court must evaluate all of the factual allegations . . . in the light most favorable to the plaintiff[s]." Id.  Unlike the consideration of a motion to dismiss, however, the court also must resolve all state-law ambiguities in the plaintiffs' favor. Id. at 107-65, 107-70.  The court must not "weigh the merits of the

_____

[1]While our court of appeals has not directly addressed the standard for analyzing fraudulent joinder, dicta in one of its decisions suggests that it agrees with the standard set forth above. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant") (citing Moore's).

3

[plaintiffs'] claim beyond determining whether the claim is arguable under state law." Id. at 107-66.

## II.  **Analysis**

### A.  *Fraudulent joinder*

The removing defendants have not accused the plaintiffs of "outright fraud" in pleading jurisdictional facts.  Rather, they argue that the joinder of the two pharmacy defendants should be deemed fraudulent because there is no possibility that the plaintiffs would be able to hold the pharmacies liable for failing to warn of metoclopramide's side effects.  Both sides agree that, because the pharmacies allegedly dispensed the drug in Massachusetts, the viability of the plaintiffs' failure-to-warn claims must be evaluated under Massachusetts law, specifically Cottam v. CVS Pharmacy, 764 N.E.2d 814 (Mass. 2002). Finding no fault with that position, this court will apply Massachusetts law.  See, e.g., Hodgkins v. New Eng. Tel. Co., 82 F.3d 1226, 1230 (1st Cir. 1996).  As explained below, under the framework set forth in Cottam, the plaintiffs' failure-to-warn claims against the pharmacies are at least arguable.  Thus, the removing defendants have not met their burden of showing fraudulent joinder.

4

The Massachusetts Supreme Judicial Court ruled in Cottam "that, generally, a pharmacy has no duty to warn its customers of the side effects of prescription drugs," but that a pharmacy "may voluntarily assume a duty to provide information, advice, or warnings." 764 N.E.2d at 819-21.  Whether a pharmacy has assumed such a duty "is a fact-specific inquiry based on the totality of the pharmacy's communications with the patient and the patient's reasonable understanding, based on those communications, of what the pharmacy has undertaken to provide." Id. at 823.  For example, "merely affix[ing] a label warning" from the manufacturer is not enough to assume a duty, but "a more detailed list of warnings" could be enough if "the patient could reasonably interpret [it] as a complete and comprehensive list of all known side effects." Id. at 822-23.  The court concluded that the pharmacy in Cottam assumed a duty to warn by giving the patient its own warning form, which listed some but not all of the drug's side effects, and then by discussing the drug and at least one side effect with the patient.  Id. at 818, 823.

The removing defendants argue that the plaintiffs' complaint fails to state a claim under Cottam because it does not allege that the pharmacies did anything more than provide the manufacturer's warning (or "package insert") for metoclopramide. But the complaint expressly alleges that not only the "package

inserts," but also "patient drug information forms, counseling, warnings, or literature, provided to the pharmacy defendants' customers, including plaintiff, by pharmacy defendants, were inaccurate and failed to fully apprise patients, like plaintiff, of the known or knowable risks associated with the use of" the drug.  Document no. 1-1 at ¶ 124; <u>see also</u> <u>id.</u> at ¶ 35 (alleging that the pharmacy defendants "provid[ed] patient counseling and education monographs . . . to the Plaintiffs and consumers"). Under <u>Cottam</u>, the pharmacies' alleged provision of additional documents and counseling arguably could give rise to a duty to warn, and the alleged inadequacy in their warnings could give rise to liability.

It is true that, as the removing defendants note, the complaint also alleges that the "drugs that the pharmacy defendants provided to plaintiff . . . were dispensed unchanged from the original retail package of the manufacturer," document no. 1-1, at ¶ 223, and that the pharmacy defendants "attach[ed] labels to the bottle/vial before giving the same to the patient/customer, without proper patient package inserts, warnings, counseling, and information," <u>id.</u> at ¶ 222.  But those allegations are not necessarily inconsistent with the ones set forth above.  Even if the pharmacies did not make changes to the manufacturer's package or provide "proper" warnings of their own,

they could nevertheless have provided <u>improper</u> warnings <u>in
addition to</u> the manufacturer's package.  Indeed, the plaintiffs
have confirmed in their briefing to this court that their
allegation is that the pharmacies provided additional, inadequate
warnings.  <u>See</u> documents no. 13-1 and 25, each at 2.  In any
event, this court must construe the complaint in the light most
favorable to remand.  <u>See</u> Part I, <u>supra</u>.

This is not to say that the plaintiffs' failure-to-warn
claims against the pharmacies have a likelihood of succeeding on
the merits in state court.  According to one treatise,
"plaintiffs have almost always been unsuccessful" in bringing
claims of this sort.  5 Louis R. Frumer & Melvin I. Friedman,
<u>Products Liability</u> § 50.03[1], at 50-20 (2010).  Massachusetts,
however, is one of a handful of jurisdictions that have opened
the door to such claims, at least under certain circumstances.
<u>Id.</u> § 50.03[3][c], at 50-32 (listing Cottam as one of the notable
"exceptions" to the general rule that pharmacies cannot be held
liable for failure-to-warn, and suggesting that it may mark the
beginning of a broader trend in that direction).  Construing both
the complaint's allegations and Massachusetts law in the light
most favorable to the plaintiffs, then, it is at least arguable
that the plaintiffs could prevail against the pharmacy

defendants.  That conclusion necessarily marks the end of the
court's analysis of this issue.  See Part I, supra.


**B.  *Stop & Shop's citizenship***

In addition to fraudulent joinder, the removing defendants
argue in a footnote that Stop & Shop, the only defendant alleged
to be a citizen of the plaintiffs' home state (Massachusetts), is
not really a citizen of that state.  But the plaintiffs have
submitted a registration form, filed with the Rhode Island
Secretary of State, which indicates that Ahold U.S.A., Inc., the
alleged sole member of Stop & Shop (a limited liability company),
is incorporated in Maryland and has its "principal office" at
Stop & Shop's headquarters in Quincy, Massachusetts.  See
document no. 13-5.[2]  Ahold U.S.A.'s citizenship would make Stop &
Shop a citizen of both Maryland and Massachusetts for purposes of
diversity jurisdiction.  See, e.g., 28 U.S.C. § 1332(c)(1) ("a
corporation shall be deemed to be a citizen of any State by which
it has been incorporated and of the State where it has its

_____

[2]The form also gives the same Quincy, Massachusetts address
for each of Ahold U.S.A.'s officers and directors.  See Hertz
Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010) (explaining that a
corporation's principal place of business, for jurisdictional
purposes, is its "nerve center," meaning "the place where a
corporation's officers direct, control, and coordinate the
corporation's activities").

8

principal place of business"); Pramco, LLC ex rel. CFSC
Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54
(1st Cir. 2006) ("the citizenship of a limited liability company
is determined by the citizenship of all of its members").

The removing defendants allege, in response, that Maryland
tax authorities have listed Ahold's "principal office" as being
in Maryland.  But the defendants neglected to submit that
competing form as an exhibit (their brief says "See Exhibit __").
And even if they had submitted it, "the mere filing of a form
. . . listing a corporation's 'principal executive offices'" is
not, "without more, . . . sufficient proof" for "the party
asserting" federal jurisdiction to establish that corporation's
principal place of business.  Hertz, 130 S. Ct. at 1194-95.
Again, the defendants are the ones asserting diversity
jurisdiction here, and hence the ones with the burden to show
that Stop & Shop is not a Massachusetts citizen, as alleged.  See
16 Moore's, supra, § 107.11[3], at 107-44.  They have not done
anything to meet that burden.  Cf., e.g., Hertz, 130 S. Ct. at
1186 (noting that the defendant there submitted a detailed, and
unchallenged, declaration refuting the plaintiffs' allegation
regarding its principal place of business).  Indeed, the
plaintiffs have made a stronger showing to the contrary.

Because the plaintiffs properly joined Stop & Shop, an allegedly non-diverse defendant, and asserted only state-law claims, this court lacks subject-matter jurisdiction, and the case must be remanded.  In light of that conclusion, this court need not address the plaintiffs' argument that the case should also be remanded because the other pharmacy defendant, CVS, is a citizen of the state where they brought the action, see 28 U.S.C. § 1441(b), or the defendant's counter-argument that the plaintiffs waived that issue by waiting more than 30 days after removal before moving to remand.  See id. § 1447(c) (requiring plaintiffs to raise non-jurisdictional challenges to removal within 30 days); Farm Constr. Serv., Inc. v. Fudge, 831 F.2d 18, 21-22 (1st Cir. 1987) (indicating that removal of a case brought in one of the defendants' home states is a procedural defect, not a jurisdictional one).

**C.   *Attorneys' fees***

Finally, the plaintiffs request that, in addition to remanding the case, this court award them attorneys' fees and costs incurred in connection with the unsuccessful removal.  See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").  "Absent unusual

circumstances," however, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). That is not the situation here. While their arguments did not carry the day, the removing defendants had a reasonable, good-faith basis for at least attempting removal, especially given the lack of clarity in the plaintiffs' complaint. Moreover, the plaintiffs' delay in moving to remand also weighs against a fees award, see id. (noting that as a permissible consideration), since it required the defendants to conduct additional research and briefing on the waiver issue, see Part III.B, supra.

## IV.   **Conclusion**

For the reasons set forth above, the plaintiffs' motion to remand[3] is GRANTED, except as to their request for an award of attorneys' fees and costs, which is DENIED. The clerk shall remand the case to Rhode Island Superior Court and close the case here.

---

[3]Document no. 13.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 22, 2011

cc:  Donald A. Migliori, Esq.
     Leah J. Donaldson, Esq.
     Vincent L. Greene, IV, Esq.
     Joseph R. Weisberger, Jr., Esq.
     Jonathan R. Shank, Esq.
     Michaela A. Fanning, Esq.
     Brooks R. Magratten, Esq.
     Michael J. Daly, Esq.
     Andrew J. Calica, Esq.
     Henninger S. Bullock, Esq.
     John B. Daukas, Esq.